UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THELMA L.,[1] | ) |
| | ) No. 19 CV 6804 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| KIJOLO KIJAKAZI,[2] Acting | ) |
| Commissioner of Social Security, | ) |
| | ) July 26, 2021 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Thelma L. seeks disability insurance benefits ("DIB") based on her claim that she is disabled by osteoarthritis of the right shoulder, which she says prevented her from engaging in full-time work from August 19, 2011, through September 30, 2015, her date last insured. Before the court is Thelma's motion for summary judgment. For the following reasons, the motion is denied:

**Procedural History**

Thelma filed her DIB application in March 2017 alleging disability beginning on August 19, 2011. (Administrative Record ("A.R.") 204-10.) The government denied her application initially and on request for reconsideration. (Id. at 49-70, 78, 92-94,

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the claimant's first name and last initial throughout this opinion to protect her privacy to the extent possible.

[2] Kijolo Kijakazi has been appointed Acting Commissioner of Social Security. As such, she is automatically substituted as Defendant in this case. See Fed. R. Civ. P. 25(d).

101-03.) Thelma requested and received a hearing before an administrative law judge ("ALJ"), (id. at 104-08), and in May 2018 Thelma appeared at the hearing with her attorney and a vocational expert ("VE"), (id. at 15-48). On September 20, 2018, the ALJ issued a decision finding that Thelma was not disabled during the applicable period. (Id. at 78-87.) When the Appeals Council declined review, (id. at 1-8), the ALJ's decision became the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Thelma then filed this lawsuit seeking judicial review, and the parties consented to the court's jurisdiction. (R. 8); *see also* 28 U.S.C. § 636(c).

**Facts**

Thelma was born in Guatemala and moved to the United States in 1986, later becoming a United States citizen. (A.R. 204, 299.) She has a sixth-grade education and has worked as a factory worker and laborer. (Id. at 27, 299.) She injured her right shoulder lifting boxes at work in August 2011 and had surgery to repair a torn rotator cuff in May 2013. (Id. at 299.) She says it hurts her right arm to raise it overhead and to lift and carry. (Id.) She submitted documentary and testimonial evidence to support her DIB claim.

**A.     Medical Evidence**

Medical records show that Thelma sustained a right shoulder injury on August 19, 2011. (A.R. 419.) Dr. James Schiappa began treating Thelma for her injury in early September 2011. (Id. at 415, 417, 419.) At that time, he recommended physical therapy and prescribed pain medication. (Id.) After examining Thelma in October

2

2011, Dr. Schiappa noted that Thelma felt 70% improved and her pain level was 5 out of 10. (Id. at 411.) About a week later, on October 17, 2011, an MRI revealed a partial tear of the supraspinatus tendon, along with mild degenerative changes. (Id. at 404, 406, 409.) By late 2011 Dr. Schiappa advised that Thelma required surgery to repair her right rotator cuff. (Id. at 400, 404, 406.) While awaiting authorization for surgery, Thelma continued with physical therapy. (Id. at 393.)

In February 2012 Thelma complained of "discomfort and tingling on the fifth digit on the right side." (Id. at 398.) By August 2012 Thelma was experiencing "much discomfort upon range of motion," and Dr. Schiappa continued to emphasize that she would not improve or be able to return to work until she underwent surgery. (Id. at 384; see also id. at 374.) Dr. Schiappa recorded her range of motion and abduction at 60 degrees and her bilateral rotation at 5 degrees. (Id.)

Thelma had her surgery in May 2013 to explore the right shoulder and repair the right rotator cuff. (Id. at 357, 359, 487.) The exploration revealed mild degenerative changes in the right shoulder, connective tissue with focal fibrosis and hemorrhage, but no evidence of active inflammation. (Id. at 357.) After the surgery, Dr. Schiappa recommended that Thelma not return to work for six months. (Id. at 351.) During that time, Thelma was reported to have improved range of motion and less pain. (Id. at 335, 337, 343, 347, 351.) Dr. Schiappa noted after a July 2013 visit that therapy was helping Thelma "tremendously with the right shoulder." (Id. at 337.) After examining Thelma on September 3, 2013, Dr. Schiappa noted "good range

3

of motion of the right shoulder" and abduction of 120 degrees, internal rotation of 60 degrees, and external rotation of 20 degrees. (Id. at 331.)

Thelma continued with physical therapy until October 2013 when Dr. Schiappa determined that she could "start gentle range of motion on her own" in light of "extensive[]" therapy she had already received. (Id. at 323, 327.) On examination her abduction was 110 degrees, and with assistance she was able to move her right shoulder to 130 degrees. (Id.) Rotation of the joint was 60% of the normal rate. (Id.) After examining Thelma in November 2013, Dr. Schiappa informed her that she could return to work but not lift more than 30 pounds. (Id. at 315.) On examination her triceps, biceps, and brachioradialis were "present and equal" bilaterally. (Id.)

Dr. Nikhil Verma examined Thelma in December 2013 and found that her cervical range of motion was maintained and she had "no pain over the AC or SC joint." (Id. at 762-64.) Her range of motion of the right shoulder showed "significant stiffness," with external rotation on the right side at 20 degrees compared with 70 degrees on the left side. (Id. at 763.) Dr. Verma determined there was "no evidence of instability with negative anterior apprehension and posterior jerk test" and the neurological exam showed normal functioning. (Id.) Despite complaints of "minor numbness in the ulnar digits," sensation was "grossly intact to light touch," according to Dr. Verma. (Id.) Consequently, he opined that Thelma was capable of sedentary work with "no lifting, push-pull or overhead activity." (Id.) He further opined that over-the-counter medications were "reasonable and necessary" for "significant stiffness, loss of motion and persistent pain." (Id.)

4

Thelma then returned to work for three hours but reported that she could not continue her employment. (Id. at 313.) Dr. Schiappa examined Thelma on December 10, 2013, and noted that she was "working better with Tylenol #3." (Id. at 309.) He reported that Thelma had returned to physical therapy. (Id.) Dr. Schiappa reexamined Thelma on January 7, 2014, and noted that she was "improving with therapy with ultrasound, TENS stimulation and gentle range of motion." (Id. at 307.) He stated that she was not able to work "regular duty." (Id.) On February 11, 2014, Thelma's physical therapist reported that Thelma had "reached a plateau" and discontinued the therapy. (Id. at 500; see also id. at 501 (noting that Thelma had a Neer impingement).)

Dr. Schiappa examined Thelma on March 18, 2014, and determined that her range of motion and abduction were 100 to 110 degrees, her external rotation was 30 degrees, and her internal rotation was 10 degrees. (Id. at 305.) He reported that she was not able to perform physical work but that she "can do a light duty work, answering the phone [or performing] visual security." (Id.) He added that a "physical job is not feasible" for Thelma because she is "disabled." (Id.) During the relevant period Dr. Schiappa treated Thelma's right shoulder impairment and associated pain generally with Naprosyn, Tylenol No. 3,[3] and physical therapy. (Id. at 313, 378.)

More than five months after the close of the relevant period, on March 9, 2016, Dr. Verma examined Thelma again. (Id. at 765-67.) This time he wrote that he did

---

[3] Dr. Schiappa noted that Thelma had an adverse reaction to Hydrocodone. (A.R. 378.)

5

"not feel that [Thelma was] totally disabled," and he opined that she could perform light-duty work with a 10-pound lifting restriction. (Id. at 767.) He also recommended that she undergo a functional capacity evaluation ("FCE"). (Id.) About two months later, on May 13, 2016, Thelma underwent an FCE, and she was able to: sit and stand for 30 minutes each; walk two miles; lift 10 pounds from waist to shoulder and 5 pounds from shoulder to overhead; occasionally lift 15 pounds; and carry 15 pounds. (Id. at 561.) Because Thelma had a higher capacity for carrying than for lifting, carrying capacity was revised to 10 pounds. (Id.) But Thelma could not reach in all directions with her right arm. (Id. at 562.) The FCE classified her as being capable of performing light work. (Id. at 561.)

**B.     Hearing Testimony**

At her May 2018 hearing Thelma testified that she stopped working after hurting her right shoulder in August 2011. (A.R. 31.) She experiences pain in that shoulder and arm, along with difficulty bending her right middle and ring fingers. (Id. at 35-36, 38-39.) She had surgery on her right shoulder in May 2013 and her pain has decreased somewhat since then. (Id. at 36, 40.) When she experiences pain or stiffness, she takes Advil or ibuprofen. (Id. at 37.)

In terms of her daily activities, Thelma said that she is able to drive and shop for groceries, although she feels pain in her right arm and hand when she turns the steering wheel to the right and when she pushes the grocery cart or removes items from a higher shelf. (Id. at 35-37.) She has difficulty preparing meals and using silverware. (Id. at 37, 39-40.) Thelma also testified that she was not able to lift more

6

than 10 pounds during the relevant period. (Id. at 39; see also id. at 256-63 (function report from Thelma's son).)

A VE also testified and described Thelma's prior work as a hand packager, designated as medium work but performed as light work, and a commercial cleaner, designated and performed as heavy work. (Id. at 44.) The ALJ asked the VE whether a hypothetical individual could perform Thelma's past work if she had a residual functional capacity ("RFC") for light work with limitations including occasional overhead reaching with the right upper extremity and occasional operation of hand controls with the right upper extremity. (Id.) The VE testified that such a person could perform Thelma's past work as a hand packager, as performed at the light level, but not as a commercial cleaner. (Id. at 45.) The VE added that this hypothetical individual could also perform other jobs in the national economy, such as housekeeping cleaner, cafeteria attendant, and sales attendant. (Id.) In response to questioning by the ALJ, the VE confirmed that such positions, which are classified as light work, require lifting up to 20 pounds. (Id.)

### C.     The ALJ's Decision

The ALJ engaged in the standard five-step evaluation process in considering Thelma's DIB claim. *See* 20 C.F.R. § 404.1520(a). At steps one and two the ALJ found that Thelma did not engage in substantial gainful activity between her August 2011 alleged disability onset date and her September 2015 date last insured, and that she suffered from the severe impairment of osteoarthritis of the right shoulder (status

7

post-surgery for rotator cuff tear). (A.R. 80-81.) At step three the ALJ determined that Thelma's shoulder impairment was not of listings-level severity. (Id. at 81.)

Before turning to step four, the ALJ determined that during the relevant period Thelma retained the RFC for light work, but that she was limited to only occasionally reaching overhead and operating hand controls with the right upper extremity. (Id.) In explaining her assessment, the ALJ wrote that the medical evidence and other evidence of record did not support Thelma's claim that her right shoulder impairment and pain were so severe that she was unable to continue working. At step four the ALJ concluded that based on her RFC Thelma was able to perform her past relevant work as a hand packager. (Id.) As a result, the ALJ decided that Thelma was not disabled during the relevant period and denied her DIB claim. (Id. at 85.)

## Analysis

Thelma raises two challenges to the ALJ's decision in the motion for summary judgment: (1) the ALJ erred in concluding that Thelma could perform her past relevant work; and (2) the ALJ did not support with substantial evidence her alternative step-five finding that Thelma could perform other jobs, including housekeeping cleaner, cafeteria attendant, and sales attendant. In reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate

8

to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This is a deferential standard that precludes the court from reweighing the evidence or substituting its judgment for that of the ALJ, allowing reversal "only if the record compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted).

### A.    Past Work Finding

Thelma asserts that the ALJ improperly determined that she could perform her past relevant work. (R. 21, Pl.'s Br. at 8-10.) As an initial matter, Thelma argues that the ALJ clearly erred by finding that Thelma could perform her past relevant work as a commercial cleaner. (Id. at 8.) The VE testified at the hearing that Thelma's past commercial cleaner work was heavy, unskilled work and that a hypothetical individual with Thelma's RFC could not perform it. (A.R. 45.) In the heading of subpart six in her decision, the ALJ wrote that "[t]hrough the date last insured, the claimant was capable of performing past relevant work as a hand packager and commercial cleaner." (Id. at 85-86.) Given the VE's testimony, Thelma is correct only to the extent that the ALJ erred by *writing* that she could work as a commercial cleaner. As the government points out, however, this typographical error was harmless because in the narrative of subpart six the ALJ found only that Thelma could perform the hand packager job, relying on the VE's testimony. (R. 23, Govt.'s Resp. at 9 (citing A.R. 86 ("[T]he undersigned finds that the claimant was able to perform the hand packager position as actually performed.").) In her narrative explanation, the ALJ never discussed the commercial cleaner position. (A.R. 85-86.)

9

Regardless, in addition to being able to perform her past work as a hand packager, the ALJ also found that there were a significant number of other jobs in the national economy that Thelma could perform. (Id. at 86.) In her testimony the VE identified housekeeping cleaner (about 300,000 jobs), cafeteria attendant (102,000 jobs), and sales attendant (about 95,000) positions in the national economy that a person with Thelma's RFC could perform. (Id. at 45.) The ALJ reasonably relied on such testimony in determining that Thelma could perform other jobs in the national economy. (Id. at 86.) Because the ALJ supported her step-five determination with substantial evidence, the court finds harmless her apparent scrivener's error in one of the headings in her written decision. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (finding that error is harmless where "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record").

Thelma next contends that the ALJ erred by improperly weighing the treating physicians' opinions. A treating source's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence."[4] *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quotation and citation omitted). "Once contrary evidence is introduced, however, a treating physician's opinion becomes just

---

[4] On January 18, 2017, new regulations issued, eliminating the treating physician rule for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520(c). Thelma filed her DIB claim on March 6, 2017. (A.R. 204.) The treating physician rule therefore applies here.

10

one piece of evidence for the ALJ to evaluate." *Ray v. Saul*, ___ Fed. Appx. ___, 2021 WL 2710377, at *2 (7th Cir. June 30, 2021) (internal citation omitted). Here Thelma alleges that the ALJ incorrectly found she could perform the job of hand packager—a job the VE described as having been performed by Thelma at the light exertional level—by rejecting the opinions of treating physicians Drs. Schiappa and Verma. (R. 21, Pl.'s Br. at 8-10.)

Thelma challenges the ALJ's decision to afford only "little weight" to Dr. Schiappa's March 2014 opinion that she is disabled and may not perform physical work. (Id. at 9 (citing A.R. 85).) In so arguing, Thelma focuses on only one part of Dr. Schiappa's March 2014 opinion. As the ALJ pointed out, Dr. Schiappa also opined that Thelma "can do a light duty work, answering the phone [or performing] visual security." (A.R. 85, 305.) The ALJ found his opinions internally inconsistent and confirmed that, for social security purposes, "[t]he ability to do light work does not equate to being disabled." (Id. at 85.)

Furthermore, in discounting Dr. Schiappa's March 2014 opinion, the ALJ cited objective medical evidence showing that while Thelma had "some continued restriction in range of motion" in her right upper extremity, she "improve[d] from therapy" after her surgery. (Id.) The ALJ pointed to Dr. Schiappa's March 2014 treatment record showing that Thelma's abduction range of motion was 100-110 degrees, external rotation was 30 degrees, and internal rotation was 10 degrees. (Id. at 83.) Considering the evidence as a whole, the ALJ determined that Thelma was capable of "a range of light work, with limitations on her right upper extremity." (Id.)

11

As such, the ALJ offered sufficient reasons to accord little weight to Dr. Schiappa's March 2014 opinion.

Thelma also claims that the ALJ improperly weighed other opinions issued by Dr. Schiappa but she failed to develop this argument. (See, e.g., R. 24, Pl.'s Reply at 1-2.) As such, Thelma has waived this argument. *See Vang v. Saul*, 805 Fed. Appx. 398, 403 (7th Cir. 2020) ("Perfunctory and undeveloped arguments are waived." (internal quotations and citation omitted)). Regardless, the ALJ adequately explained her decision to assign little or no weight to such opinions. (See A.R. 84-85.) For example, on December 7, 2013, Dr. Schiappa noted that after examining Thelma on November 19, 2013, he advised her that she could return to work but not lift more than 30 pounds. (Id. at 315.) When she later reported that she tried to work but could not continue, (id. at 313), Dr. Schiappa opined on January 7, 2014, that she was not able to work "regular duty," (id. at 307). The ALJ gave these opinions "little weight" because they were based on Thelma's subjective symptom statements and conflicted with objective medical evidence showing improvement after surgery and therapy. (Id. at 85); *see also Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. Feb. 2021) ("[A]n ALJ does not owe any deference to the portion of a treating physician's opinion based solely on the claimant's subjective complaints."). Earlier in her decision the ALJ cited the objective evidence supporting her finding. (A.R. 82-84.) The reasons provided by the ALJ constitute substantial evidence to support her medical opinion evaluation. *See Gladney v. Saul*, ___ Fed. Appx. ___, 2021 WL 1595442, at *3 (7th Cir. April 23, 2021).

Thelma asserts that the ALJ failed to give proper weight to Dr. Verma's opinion that she reached maximum medical improvement and was restricted from lifting more than 10 pounds and performing overhead work. (R. 21, Pl.'s Br. at 8 (citing A.R. 767).) The ALJ assigned "very limited weight" to Dr. Verma's opinion, explaining that the objective medical evidence, Dr. Verma's own examination, Thelma's course of treatment, and Dr. Schiappa's opinion did not support the opinion. (A.R. 85.) The ALJ provided additional explanation, noting that at the time of Dr. Verma's December 2, 2013 examination Thelma was not in "acute distress," her cervical range of motion was maintained, and she had no pain over the AC or SC joint. (Id. at 83.) Despite stiffness Dr. Verma found "no evidence of instability," the neurological exam showed normal functioning, and sensation was "grossly intact to light touch." (Id.) For treatment Dr. Verma recommended a cortisone injection, physical therapy, and over-the-counter pain medications. (Id.) And even Dr. Schiappa did not limit Thelma's use of the right arm for lifting and overhead activity. (Id. at 85.) Thus, the ALJ provided substantial evidence to support her treatment of Dr. Verma's opinion.

Finally, Thelma complains that the ALJ failed to consider the extent to which the May 13, 2016 FCE supported Drs. Schiappa's and Verma's opinions. (R. 21, Pl.'s Br. at 8-9; R. 24, Pl.'s Reply at 1-2.) The FCE classified Thelma as being capable of light work and it further showed that her revised carrying capacity was 10 pounds and that she could not reach in all directions with her right arm. (A.R. 561-62.) Thelma is correct that the ALJ did not consider the May 2016 FCE. (R. 21, Pl.'s Br. at

13

8-9.) But the government points out that the FCE post-dated Thelma's date last insured by about seven and a half months.[5] (R. 23, Govt.'s Resp. at 8.) Because Thelma bears the burden of showing that she was disabled during the relevant period, she was required to show that the FCE relates back to the applicable period. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). Thelma did not do so here. (See R. 21, Pl.'s Br.) Indeed, she did not "root [the FCE findings] in examination observations from the relevant disability period." *See Ray*, 2021 WL 2710377, at *2. The court thus finds no error in the ALJ's failure to consider the FCE. *See Spiva*, 628 F.3d at 353. Accordingly, Thelma has failed to show that the ALJ erred in finding that she was capable of performing her past work as a hand packager.

**B.     Alternative Step-Five Finding**

Thelma challenges the ALJ's step-five finding that, even if Thelma could not perform past work, she could perform the jobs of housekeeping cleaner, cafeteria attendant, and sales attendant in the national economy. (R. 21, Pl.'s Br. at 10-11 (citing A.R. 87).) According to the VE, these positions are classified as light work and require lifting up to 20 pounds. (Id. at 10 (citing A.R. 45).) Thelma claims that because neither the treating physicians' opinions nor the May 2016 FCE supports a claimant with her limitations being able to perform light work or lift 20 pounds,

---

[5] The government states that because "the harmless error inquiry is prospective rather than retrospective" it may provide reasons not given by the ALJ to show that a remand would not produce a different result. (R. 23, Govt.'s Resp. at 8 (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)).) In her reply Thelma does not challenge the government's contention in this regard. (R. 24, Pl.'s Reply.)

substantial evidence does not support the ALJ's alternative step-five finding. (Id.; R. 24, Pl.'s Reply at 3.) She also asserts that the evidence shows she is limited to sedentary work and therefore the Medical-Vocational Guidelines require a finding of disability. (R. 21, Pl.'s Br. at 10.) The government correctly responds that Thelma's arguments here are tantamount to "a challenge to the ALJ's RFC" assessment. (R. 23, Govt.'s Resp. at 10.) In her reply Thelma argues that "[t]he only way the ALJ could find [her] able to do light work is by improperly rejecting the opinions of Drs. Schiappa and Verma and ignoring the FCE." (R. 24, Pl.'s Reply at 3.) For the reasons already provided, the ALJ supported with substantial evidence her evaluation of the treating physicians' opinions and did not commit reversible error by failing to consider the May 2016 FCE. The court therefore finds no error in the ALJ's alternative step-five finding.

## Conclusion

For the foregoing reasons, Thelma's motion for summary judgment is denied, and the Commissioner's decision is affirmed.

ENTER:

*[signature: Young B. Kim]*

**Young B. Kim**
**United States Magistrate Judge**

15